James O., et al. v. Twomey, et al.   CV-86-006-M   03/24/99
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>James O.; Kelly E.;</u>
<u>and William B.; et al.</u>,
     Plaintiffs

     v.                                      Civil No. 86-6-M

<u>Elizabeth M. Twomey, in Her</u>
<u>Official Capacity As Commissioner</u>
<u>of the New Hampshire Department</u>
<u>of Education, et al.</u>,
     Defendants

**O R D E R**

The parties were strongly encouraged to resolve these seemingly minor issues, following the hearing held on pending motions.  Silence during the ensuing months presumably establishes their inability to do so and, accordingly, the court has revisited those motions.

Plaintiffs' Motion for Random Sample Monitoring, etc., (document no. 214) is granted — the court has entered the proposed order.  The request is reasonable, it is neither intrusive nor burdensome, compliance is subject to adequate safeguards relative to privacy, and the court's own interest in insuring compliance with the consent decree will be served by plaintiffs' review of the requested documents.  The complaints, such as they are, in plaintiffs' Motion to Enforce Consent Decree (document no. 213) seem to be essentially theoretical and hypothetical — whether any meaningful dispute exists over the content of the referenced regulations, and whether any real world

effect would be felt if such a dispute went unresolved, seems doubtful. Nevertheless, permitting plaintiffs to sample defendants' records for compliance with the decree may shed some light on the difficulties plaintiffs purport to perceive in the implementing regulations.

In the meantime, while plaintiffs carry out their sampling, the Motion to Enforce is denied, without prejudice to renewing it after plaintiffs' counsel complete their review, but with the following brief guidance for all parties.

By its terms, the consent decree takes precedence over conflicting or inconsistent implementing regulations. Consent decree, Section II, para. 6. The enactment of conflicting or inconsistent regulations, then, is something of an empty exercise by the state — the consent decree remains binding and compliance with contradictory or inconsistent regulations would not likely serve as an effective defense to a contempt action.

Taking plaintiffs' complaints in turn briefly, it would appear that to the extent the regulations do, in fact, operate to carve out an exception to defendants' obligations under the decree (to provide "_any_ _document_ _in_ _the_ _possession_ _of_ [DCYF and DYDS], the Department of Education, or any school district which is relevant to the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child") by changing the definition of educational records from "_any_ _document_ in [its] possession" to "any case records," then the regulation falls short, the decree

2

trumps, and compliance with the decree is required. "Any document in its possession," is not a difficult concept. If other requirements of law call for some pre-release action, then of course the defendants would likely be, implicitly at least, obligated to take all steps necessary to lawfully release any and every relevant document. If a particular document cannot be provided except upon court order, then a court order should be sought; if a release is required then a release ought to be obtained. And, of course, under the consent decree the state defendants voluntarily agreed to establish whatever interagency agreements might be necessary to fully implement the plan. (Plaintiffs, of course, are also free to petition for administrative rulemaking to clarify or change any regulation they perceive to be inconsistent in fact, or even potentially inconsistent, with the consent decree.)

Plaintiffs' second point — that the regulatory phrase "will recommend" is different from the decree's phrase "may recommend," and the difference as embodied in the implementing regulations could lead to tardy, and therefore ineffective, notice to a legally liable school district of potential non-emergency placements — is strained and of little practical import. The pleadings do not identify any real world examples of possible injury resulting from the language difference. And, while providing notice of potential placements as early as possible is no doubt helpful, giving notice of speculative (or even unlikely) but "possible" placements would not be helpful in serving any

3

legitimate interest. The "spirit" of the language at some point comes into play — it is a consent decree after all; the parties drafted it, agreed to its terms, and presumably were committed to accomplishing its intended objectives. In any event, it is not necessary to determine whether any real or actual controversy exists on that point at this juncture (nor is it possible given the current record). Plaintiffs' counsels' sampling should provide some better insight into the magnitude of any real difficulties anticipated in counsels' word-play, but no generalized "enforcement" will likely be required since, again, the decree controls and in any specific instance where the decree is not adhered to, a fact-based enforcement action can be brought. Plaintiffs do not identify any actual instances of specific, or even general, noncompliance; they merely perceive deficiencies in the regulations that, they think, might serve to effect future non-compliance.

As to the third complaint — it is sufficient to say that regulatory language requiring that notice of a change in placement be given "promptly but no more than 5 days after receipt by the division of notice of the residential placement or change in residential placement," He-C 6443.06(a); Yas 501.04(a), is not inconsistent with the decree. "Promptly" is a flexible concept embodying reasonableness, as determined on a case-by-case basis; plaintiffs' effort to hammer it into a fixed and arbitrary measure of time will not likely succeed. The regulation plainly requires prompt action; putting a reasonable limit beyond which

4

action will be presumptively deemed untimely hardly alters the basic obligation to act "promptly" under the circumstances. Again, whether in practice any real problem exists remains to be seen.

Plaintiffs' next three complaints seem equally strained and unfocused. "Joint" responsibility for holding an evaluation and placement meeting, as contemplated by the decree, hardly alters preexisting legislatively-allocated legal responsibilities. The legally liable school districts must be allowed to perform their own discrete obligations. State agencies are not to usurp school district functions nor do they act as surrogate school districts except as specifically authorized in the decree. The referenced regulatory language does not raise any realistic difficulties relative to the consent decree's requirements. For example, surely, the division's representatives are not <u>required</u> to attend evaluation and placement meetings just because a parent or school district "in their discretion" extends an invitation. If such power — to mandate division attendance at will — were given to parents or school districts, the division would soon be unable to manage its limited resources. The regulation appears reasonable on its face to the extent it seeks to allocate those very limited and valuable resources by providing for attendance when attendance is necessary to effectuate the division's plan (presumably including an educational component). In plain language, attendance is tied to the reasonable likelihood of providing helpful input. Once again, while the decree

5

anticipates division participation in a meaningful way, greater rigidity in imposing attendance requirements, even when no possible benefit can come of it, is neither helpful nor warranted.

If the defendants are not complying with the consent decree, or are in fact invoking the specific language referenced by plaintiffs to avoid compliance, then plaintiffs' counsels' review will provide a more solid, fact-based motion to enforce, in which event an evidentiary hearing can be scheduled to determine what, if any, enforcement is required.  But an enforcement action must be considered in context, and based upon facts rather than hypothetical speculation as to what might be the case.

Plaintiffs are reminded that to the extent their complaint is primarily with regulatory language and construction, they are free to avail themselves of the opportunities provided by the state's Administrative Procedures Act to seek appropriate clarifying amendments.  The court is not inclined to serve as a grand re-writer of state administrative regulations in the guise of enforcing the parties' consent decree, but the state defendants also must recognize that the decree they agreed to makes quite literal representations as to what the regulations are to contain.

If modifications to the decree are necessary to resolve ambiguities and clarify the objective manifestation of intent of the parties, as embodied in the document, the court is prepared to entertain such motions, but only if well-supported and fully

6

briefed. Relative to that point, the defendants' Motion to Modify Consent Decree (document no. 223) is also denied without prejudice, as inadequately supported. Modifying the decree as suggested by defendants (by providing that the decree shall be interpreted in a manner which is consistent with applicable state and federal law) would only add to the confusion already apparent, for decrees and orders are always construed in accordance with applicable law. It begs the pending questions to simply add an explicit mandate to that effect. Some "legal requirements" are of course waivable; some set floors not ceilings; some may seem to block agreed upon action but can be easily accommodated (obtaining releases to divulge otherwise protected documents, etc.).

The clerk will schedule a status conference in June of 1999, or earlier at the request of any party, to schedule further motions practice if necessary. The court anticipates, however, that both sides will more realistically and cooperatively examine their respective positions and resolve whatever interpretive disputes remain after plaintiffs' sampling is complete.

## Conclusion

Plaintiff's Motion for Random Sample Monitoring, etc. (document no. 214) is granted. Plaintiff's Motion to Enforce Consent Decree (document no. 213) is denied without prejudice. Defendants' Motion to Modify Consent Decree (document no. 223) is denied without prejudice.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 24, 1999

cc:  Nancy J. Smith, Esq.
      Kathleen B. Boundy, Esq.
      Ronald K. Lospennato, Esq.
      Gerald M. Zelin, Esq.
      Judy T. Constantian, Esq.